FILED & ENTERED

MAR 12 2018

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY jones    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re: | CHAPTER 7 |
| Raymond Renaissance Theater, LLC | Case No.:  2:16-bk-10010-BB<br>Adv No:   2:17-ap-01274-BB |
| Debtor(s). | **MEMORANDUM DECISION GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY ADJUDICATION OF ISSUES** |
| Khaled A. Tawansy | Date:      March 6, 2018<br>Time:     2:00 PM<br>Courtroom: 1539 |
| Plaintiff(s), | |
| v. | |
| Sam S. Leslie | |
| Defendant(s). | |

The parties' motion for summary adjudication of issues based on stipulated facts (the "Motion") came on for hearing before the above-entitled Court on March 6, 2018 at 2:00 p.m.  For the reasons set forth below, the court grants the request of RIF

-1-

Investments-3, LLC ("RIF") for an adjudication that it is entitled to payment of the $24,400.70 deposited with the Los Angeles Superior Court in <u>RIF Investments-3, LLC v. Raymond Renaissance Theater, LLC, et al.</u>, LASC Case No. EC06432 (the "Second UD Action"), together with any interest accrued thereon, less RIF's one-half of the fees and expenses charged to the parties by the mediator in the above-adversary proceeding. The balance of the relief sought in the Motion must be denied.

**I**

**STIPULATED FACTS**

The facts upon which the Court's analysis is based -- which are set forth in more detail in the parties' January 30, 2018 "Joint Stipulation Regarding Motion for Summary Adjudication of Issues," Docket No. 32 (the "Stipulation") -- can be summarized as follows:

At all times relevant herein, Dr. Khaled A. Tawansy ("Dr. Tawansy") owned or controlled both Khaled A. Tawansy, M.D., Inc., a California corporation ("Tawansy Inc."), and the debtor Raymond Renaissance Theater, LLC (the "Debtor").

On or about February 20, 2013, the Debtor leased a piece of real property at 129 North Raymond Avenue in Pasadena, California, (the "Property") from RIF for a term of five years commencing on May 10, 2013.  Dr. Tawansy personally guaranteed this lease (the "Lease").  By January of 2015, the Debtor had fallen behind on the payment of rent due under the Lease.

On or about February 20, 2015, RIF brought an unlawful detainer action against the Debtor with regard to the Property in Los Angeles Superior Court (case no. EC063560) (the "First UD Action").  The Debtor moved to continue the trial in that action, and the Superior Court granted that request, conditioned on the Debtor's depositing with the Court the sum of $22,110.48.  The Debtor paid this amount (the "First Deposit") by

delivering to the Superior Court a check from the Law Office of Donald E. Karpel's attorney client trust account for this amount.[1]

The Debtor obtained judgment in its favor in the First UD Action. Notwithstanding anything to the contrary that may be contained in the Stipulation, the parties acknowledged on the record at the time of hearing on the Motion that the First Deposit currently remains in the possession of the Los Angeles Superior Court.

.On August 6, 2015, the Debtor filed an interpleader action in Los Angeles Superior Court (case no. EC064341) (the "Interpleader Action") against RIF and certain other individuals. In connection with that action, the Debtor deposited with the Superior Court the additional sum of $147,273.10 and requested that this new amount (the "Second Deposit") be combined with the First Deposit and treated as having been interpleaded as and for rents due with regard to the Property in the Interpleader Action. The Debtor paid the Second Deposit by delivering to the Superior Court a check for $80,000 from the Law Office of Donald E. Karpel's attorney client trust account and a check for $67,273.10 from Tawansy Inc.[2] In or about August of 2015, RIF filed a motion in the Interpleader Action seeking a release of these deposits (jointly, the Combined Deposits"). That motion was denied.

The Debtor dismissed the Interpleader Action on November 13, 2016, and moved for the release of the Combined Deposits on December 18, 2015 and filed an amended motion seeking the same relief on December 21, 2015. That motion was pending in the Superior Court when the Debtor filed this voluntary chapter 7 bankruptcy case (the "Case") on January 3, 2016. Sam S. Leslie (the "Trustee") was appointed

---

[1] Although the parties have stipulated that the Debtor used this check to deliver the First Deposit to the Superior Court, neither the Trustee nor RIF has stipulated that Tawansy was the owner of the funds represented by this check. The Trustee and RIF have reserved the right to conduct discovery concerning ownership of these funds should this issue prove relevant to the outcome of this action.

[2] Although the parties have stipulated that the Debtor used these checks to deliver the Second Deposit to the Superior Court, neither the Trustee nor RIF has stipulated that Tawansy was the owner of the funds represented by these checks. The Trustee and RIF have reserved the right to conduct discovery concerning ownership of these funds should this issue prove relevant to the outcome of this action.

chapter 7 trustee in the Case.

On August 7, 2015, RIF filed the Second Unlawful Detainer Action against the Debtor with regard to the Property in Los Angeles Superior Court. The Debtor moved to continue the trial in that action, and the Superior Court granted that request, conditioned on the Debtor's depositing with the Court the sum of $24,400.70 (the "Third Deposit"). The Debtor paid the Third Deposit by delivering to the Superior Court a check from Tawansy Inc. for this amount.[3] Prior to the date of the continued trial, the Debtor vacated the Property and filed bankruptcy.

The deadline for filings proofs of claim in the Case was August 1, 2016. RIF filed a timely proof of claim seeking $1,032,411.34 in unpaid rents with regard to the Property. Neither Dr. Tawansy nor Tawansy Inc. filed a proof of claim prior to the bar date.

On or about April 13, 2016, Dr. Tawansy and Tawansy Inc. filed an adversary proceeding against the Trustee, alleging that they are entitled to a turnover of the combined amount of the First Deposit, the Second Deposit and the Third Deposit (collectively, the "Deposits") because they supplied the money necessary to pay the Deposits. That action was subsequently dismissed without prejudice pursuant to a stipulation between the parties, and Tawansy filed the above adversary proceeding seeking similar relief (the "Action") on or about May 15, 2017. The parties stipulated to permit RIF to intervene in this Action.

On or about May 17, 2016, the parties entered into a stipulation that was approved by order of this Court requesting that the Los Angeles Superior Court turnover the funds that it held on deposit in the above-described actions to the Trustee (the "Turnover Stipulation"). In response to that order, the Los Angeles Superior Court paid the Trustee the amount of the Second Deposit and the Third Deposit, together with

---

[3] Although the parties have stipulated that the Debtor used a check from Tawansy Inc. to deliver the Third Deposit to the Superior Court, neither the Trustee nor RIF has stipulated that Tawansy was the owner of the funds represented by this check. The Trustee and RIF have reserved the right to conduct discovery concerning ownership of these funds should this issue prove relevant to the outcome of this action.

-4-

accrued interest. The Trustee agreed on the record at the time of hearing on the Motion to prepare a similar stipulation for execution by the parties seeking turnover of the First Deposit from the Superior Court.

It was the intention of this Court in approving the Turnover Stipulation to arrange for a transfer of the Deposits to the Trustee without prejudice to the parties' respective rights and claims with regard to the character of these funds. Therefore, the Court has analyzed these rights and claims as if all disputed funds remained on deposit with the Superior Court.

Based on these stipulated/undisputed facts, the Trustee seeks a declaration that the Deposits are property of the Debtor's bankruptcy estate. RIF seeks a declaration that it is entitled to a turnover of the Second Deposit and the Third Deposit (or a declaration that it holds a duly-perfected security interest in or lien against these sums to secure the payment of amounts due for rent). Tawansy seeks a declaration that the Deposits are not property of the estate and should be turned over to Tawansy Inc.

## II

## EXHIBIT 49 TO DR. TAWANSY'S DECLARATION

Although the Court did not ask the parties to file supplemental declarations in connection with the Motion, anticipating instead that the parties' respective requests for relief would be based solely on stipulated facts, Dr. Tawansy nevertheless filed a declaration on February 13, 2018 [Docket No. 45] (the "Tawansy Declaration").[4] Attached collectively as Exhibit 49 to the Tawansy Declaration were copes of four agreements that paragraph 56 of the Twansy Declaration represents were executed between June 22, 2015 and November 11, 2015 (collectively, the "Debtor/Tawansy Agreements").

Each of these one-page Debtor/Tawansy Agreements purports to be an agreement between the Debtor, on the one hand, and Tawansy Inc., on the other, in

---

[4] RIF filed a series of evidentiary objections to the Tawansy Declaration [Docket No. 52, filed February 19, 2018]. The Court will enter a separate order memorializing its rulings on these objections.

-5-

which the Debtor acknowledges that the funds used to make the Deposits never belonged to the Debtor and that, if the Debtor ever obtains any of these funds back from the Superior Court, they are to be returned to Tawansy Inc.  Dr. Tawansy signed all four agreements on behalf of both the Debtor and Tawansy Inc.  There are no other signatories.

The first page of Exhibit 49 bears a date of June 22, 2015 and discusses the funds that were deposited in connection with the First UD Action.  The second page of Exhibit 49 bears a date of August 6, 2015 and discusses the funds that were deposited on August 6, 2015 in the Interpleader Action.  The third page of Exhibit 49 bears a date of October 17, 2015 and discusses the funds that were deposited in the Second UD Action.  All three of these documents contain language providing that, if any of the funds deposited with the Superior Court are returned to the Debtor, these funds are to be held in a "constructive trust" for Tawansy Inc.

The fourth and final page of Exhibit 49 is somewhat different from the other pages.  The fourth page bears a date of November 11, 2015, and recites that, based on declarations filed by defendants in the Interpleader Action, there appears to be only one party (namely, RIF) who claims an interest in the interpled funds.  Therefore, the document explains, (1) attorney Donald Karpel has advised that the Interpleader Action should be dismissed and, (2) based on the other documents included within Exhibit 49, any funds received from the Superior Court that had previously been interpled should be returned to Tawansy Inc.

As noted in RIF's response to the Motion [Docket No. 50], the Debtor/Tawansy Agreements were not attached to Tawansy's April 2016 complaint against the Trustee or to the complaint that commenced this Action. RIF contends further that the existence of these documents was never mentioned during the first adversary proceeding Tawansy brought against the Trustee or even during this Action at any time prior to the filing of the Tawansy Declaration – not even while the parties were negotiating the contents of the Stipulation.  (Similarly, this Court has no recollection of ever learning

that the Debtor/Tawansy Agreements existed prior to its review of the Tawansy Declaration.)

The only testimony contained in the Tawansy Declaration concerning the preparation or execution of the Debtor/Tawansy Agreements is the following one line, which appears on page 7, at paragraph 56: "Between June 22, 2015, and November 11, 2015, Debtor executed four separate agreements . . . ." The Tawansy Declaration does not discuss who prepared the documents; when they were prepared; whether they were in fact prepared at or about the dates shown on each document; whether the first three were signed before each of the Deposits were made; or whether all four documents were prepared and signed at a single point in time.

The Court notes that all four documents were prepared in the identical format, with the identical headings, addressees, font and font size. All four documents contain a similar typographical error – in each document, all of the paragraphs are numbered, but some of the numbers are followed by a period; others are followed by a parenthesis -- without any apparent reason for this inconsistency.

RIF and the Trustee contend that the Debtor/Tawansy Agreements are fraudulent documents that were recently created, rather than contemporaneous expressions of the parties' intent at the time of the transactions. RIF contends further that recitals contained on page one of the Debtor/Tawansy Agreements – that the Debtor never had any operations or assets or bank accounts – are sufficient to demonstrate that Dr. Tawansy and/or Tawansy Inc. are alter egos of the Debtor.

RIF asserted during oral argument on the Motion that, even if the Debtor/Tawansy Agreements were executed on or about the dates shown on the documents and are otherwise genuine, the Court should find as a matter of law that the Combined Deposits are assets of the Debtor's chapter 11 estate. Therefore, the Court has assumed solely for the sake of the legal analysis contained in this memorandum that the Debtor/Tawansy Agreements were executed on or about the dates shown in the

agreements and that they are not after-the-fact self-serving fabrications by Dr. Tawansy. In the context of a motion for summary adjudication, the Court has not made, and cannot make, a factual finding to this effect.

## III

## ANALYSIS

A. <u>RIF's Claim to an Interest in the Deposits</u>

All of the Deposits were interpled in connection with litigation involving RIF. All of the Deposits were, in one procedural context or another, deposited as or on account of rents due or potentially due RIF. To the extent that RIF holds a perfected lien or security interest in the Deposits, the Deposits should be released to RIF, as the amounts due RIF far exceed the amount of the Deposits and, on these facts, RIF would be entitled to relief from the automatic stay to foreclose upon any interest that it may have in the Deposits.[5]

Although the Superior Court ordered the Debtor to make the First Deposit in exchange for a continuance of the trial date in the First UD Action, the Debtor ultimately prevailed in the First UD Action. Thereafter, the parties conducted themselves in subsequent proceedings as if the Debtor were entitled to a refund of the First Deposit, as, for example, when the Debtor in the Interpleader Action purported to "deposit" a total of $163,383.50, calculated as the combined amount of the First Deposit and the Second Deposit.[6] In papers filed in connection with the Motion, RIF waived any right to assert an interest in, or a right to recover, the First Deposit. Thus, RIF's request for summary adjudication in its favor with regard to the First Deposit must be denied.

With regard to the Second Deposit, although it was made on account of rents due under the Lease, when the Debtor learned that there was no actual dispute among the defendants as to who was entitled to collect these rents (making an interpleader

---

[5] Although Tawansy claims that the Deposits are not property of the Debtor's bankruptcy estate, even Tawansy acknowledges that, if RIF holds a perfected lien against or security interest in some portion of the Deposits, RIF should be paid that portion of the Deposits. The claim asserted by Tawansy is a right to recover any portion of the Deposits to which RIF is not entitled.

[6] For some reason, the combined amount of these two deposits is actually 8 cents more than this amount.

-8-

action inappropriate), the Debtor dismissed the Interpleader Action. RIF attempted thereafter to obtain a release of the Second Deposit, but the Superior Court denied that request. It is hard to see how this series of events would be sufficient to give RIF a security interest in or any other lien against the Second Deposit, and RIF has not been able to articulate any theory under which it would have obtained such a lien or interest. Although the Debtor filed bankruptcy before the Superior Court had an opportunity to rule on its motion for a release of the Second Deposit, inasmuch as the Superior Court denied RIF's request for the release of these funds, it seems likely that it would have granted the Debtor's request for a release of these funds. Therefore, RIF's request for summary adjudication in its favor with regard to the Second Deposit should be denied as well.

RIF's claim to an interest in the Third Deposit, however, appears considerably more viable. Like the First Deposit, the Third Deposit was made in exchange for a one month continuance of a trial date, but, in the Second UD Action, the Debtor did not prevail at trial. Instead, the Debtor vacated the Property and filed bankruptcy before the trial date arrived. Had the Debtor requested a refund of the Third Deposit after vacating the Property but before filing bankruptcy, is there any doubt that the Superior Court would have denied that request? These funds were set aside and held for the benefit of RIF in the Second UD Action. These facts appear sufficient to create an interest in the nature of an inchoate lien in favor of RIF in these funds.[7]

As the Debtor would not have had the right to obtain a refund of the Third Deposit outside of bankruptcy, the Trustee, who steps into the Debtor's shoes for the purpose of this analysis, should not be entitled to do so either. See Lawrence v. Commonwealth of Ky. Transp. Cabinet (In re Shelbyville Rd. Shoppes, LLC), 775 F.3d 789 (6th Cir. 2014) (refusing to order turnover to the trustee of good faith deposit that

---

[7] Although the Third Deposit was paid during the 90-day period before the commencement of the Case, the Court is not concerned that the pledge of these funds for RIF's benefit would constitute an avoidable transfer under Bankruptcy Code section 547(b). As the payment was made in exchange for the right to occupy the Property during the subsequent 30-day period, RIF should be able to assert an affirmative defense under Bankruptcy Code section 547(c)(1) and/or 547(c)(4) to prevent avoidance of this transfer under section 547(b).

debtor made prepetition in connection with the purchase of real estate because the debtor had no present right to possess the deposit and thus no legal or equitable interest in it). Accordingly, RIF's request for summary adjudication of its right to recover the Third Deposit should be granted. The Trustee should be directed to release to RIF the amount of this deposit, less RIF's share of the mediator's fees in the Action.[8]

     B. <u>Tawansy's Claim to an Interest in the Deposits</u>

Subject to certain exceptions, all legal or equitable interests of the debtor in property as of the commencement of a bankruptcy case become property of the debtor's bankruptcy estate. 11 U.S.C. § 541(a)(1). Items excepted from this general rule include "any power that the debtor may exercise solely for the benefit of an entity other than the debtor" [11 U.S.C. § 541(b)(1)] and "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest" [11 U.S.C. § 541(d)]. Therefore, if a debtor holds a property in trust for someone else, the trust res does not become property of its bankruptcy estate.

In order to determine whether a debtor holds property in trust for another, the court must first look to applicable state law to see whether or not an enforceable trust exists. <u>In re Bullion Reserve of N. Am.</u>, 836 F.2d 1214 (9th Cir. 1988) (citing <u>In re Esgro, Inc.</u>, 645 F.2d 794, 797 (9th Cir. 1981)). And, if the type of trust at issue is a "constructive trust," the nondebtor bears the burden of proving the existence of the trust. <u>In re Southmark Corp.</u>, 49 F.3d 1111 (5th Cir. 1995). If the nondebtor establishes as a matter of state law that grounds exist for the imposition of a constructive trust, the debtor in possession or trustee may defeat the imposition of the trust by proving that it would be inequitable as a matter of federal bankruptcy law to impose a constructive trust over those funds. <u>In re Unicom Computer Corp.</u>, 13 F.3d 321 (9th Cir. 1994). Or, as the Fifth Circuit explained in <u>Southmark</u>, "a trust should not be imposed 'cavalierly' in

---

[8] The Trustee reported at the hearing on the Motion that RIF agreed to pay one-half of the cost of the mediator hired in this action and that RIF's share of this cost has not yet been paid. The parties therefore agreed on the record that RIF's share of the mediator's fees and expenses should be deducted from any amount that the Trustee is required to pay RIF in this action.

a bankruptcy proceeding," because "the imposition of a constructive trust is a potent remedy . . . [that] gives the successful claimant priority over the debtor's unsecured creditors." In re Southmark, supra, at 1118.

How then should Tawansy Inc.'s interest in the Deposits be characterized under California law? If Tawansy Inc. did in fact supply the funds used as the Deposits (as the Court assumes for the purpose of this analysis), but for the existence of the Debtor/Tawansy Agreements, these transactions would necessarily be characterized as either loans or capital contributions to the Debtor. As Tawansy has never produced any document resembling a promissory note or evidencing an obligation to repay the amount of the Deposits other than the Debtor/Tawansy Agreements, as between these two possibilities, the latter characterization appears the more likely. But do the Debtor/Tawansy Agreements change this result? Is the language of these agreements sufficient to give Tawansy Inc. a security interest in the Deposits or to make them into trust funds that never became a part of the Debtor's bankruptcy estate?

### 1. Does Tawansy Hold a Perfected Security Interest in the Deposits?

Tawansy did not file a timely proof of claim in the Case. Therefore, if the transactions were loans, Tawansy will be barred from participating in any distributions from the Debtor's bankruptcy estate unless it holds a duly-perfected security interest in the Deposits. This does not appear to be the case. Even if the Debtor/Tawansy Agreements could be characterized as security agreements within the meaning of Division 9 of California's Commercial Code, Tawansy did not take the steps necessary to perfect any security interests created by these agreements.

There are various methods for perfecting a security interest under Division 9 of the California Commercial Code, depending on the nature of the proposed collateral. The funds on deposit with the Superior Court do not qualify as a "deposit account" within the meaning of Cal. Com. Code § 9102(29) because the Los Angeles Superior Court is not a bank.[9] The Deposits may be "money" within the meaning of Cal.

---

[9] Cal. Com. Code § 9102(29) defines a "deposit account" as a demand, time, savings, passbook, or similar account

1  Com. Code § 1201(24);[10] or they could be "accounts" within the meaning of Cal. Com.
2  Code § 9102(2).[11] If neither of these more limited definitions applies, the Deposits would
3  fall within the general catch-all definition of a general intangible under Cal. Com. Code §
4  9102(42).[12]

5        Pursuant to Cal. Com. Code § 9310(a), security interests in accounts and
6  general intangibles must be perfected through the filing of a financing statement.
7  Pursuant to Cal. Com. Code §§ 9312(b)(3) and 9313, a security interest in money must
8  be perfected in one of the following ways:  (1) by the secured party's taking possession
9  of the money; (2) by having the party in possession of the money authenticate a record
10 that acknowledges that the money is held for the secured party's benefit; or (3) by
11 having the third party take possession of the money after having authenticated a record
12 acknowledging that it will hold possession of the money for the benefit of the secured
13 party.  See also Goldberg & Connolly v. New York City Bankcorp, Inc., 565 F.3d 66 (2d
14 Cir. 2009) (lender failed to perfect security interest in funds that had been interpled with
15 the United States District Court for the Eastern District of New York because a security
16 interest in money is perfected only when the holder of the interest is in actual
17 possession of the money).

18       Regardless of whether the Deposits are money, accounts or general
19 intangibles, Tawansy has failed to take the steps necessary to perfect a security interest
20 in the Deposits.  Tawansy did not file a financing statement.  It did not take possession
21 of the Deposits, and it did not have the Superior Court acknowledge that it held the
22 Deposits for the benefit of Tawansy.  Therefore, even if Tawansy holds a security

---

maintained with a bank.  Cal. Com. Code § 1201(4) defines a "bank" as a person engaged in the business of banking, and includes a savings bank, savings and loan association, credit union, and trust company.  The Superior Court is none of these.

[10] Section 1201(24) defines "money" as "a medium of exchange currently authorized or adopted by a domestic or a foreign government."

[11] Section 9102(2) defines "account" as a right to payment of a monetary obligation, whether or not earned by performance,  that falls within 8 separate categories, none of which seem applicable here.

[12] Section 9102(42) defines a "general intangible" as any personal property, including payment intangibles, software and things in action, *other than* accounts, chattel paper, commercial tort claims, deposit accounts, documents goods, instruments, investment property, letter-of-credit rights, letters of credit, money, and oil, gas, or other minerals before extraction.

interest in the Deposits to ensure their repayment, it does not hold a *perfected* security interest in them.

### 2. Should the Deposits be Characterized as Trust Funds?

California law defines a trust as "a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of intention to create it." Presta v. Tepper, 179 Cal. App. 4th 909, 913-14 (2009); California-Nevada Annual Conf. of United Methodist Church v. St. Luke's United Methodist Church, 121 Cal. App. 4th 754, 767-68 (2004). Several different types of trusts exist under California law.  The first two arise before, and without reference to, any wrongdoing that caused a debt to arise from the potential trustee to the beneficiary:

1. Express Trust – One in which there is (a) an explicit declaration of trust by a competent trustor, followed by an actual conveyance or transfer of trust property, (b) the intent to create a trust, (c) a lawful trust purpose and (4) an identifiable beneficiary.   See Cal. Prob. Code §§ 15201-15203, 15205; Luna v. Brownell, 185 Cal. App. 4th 668, 674 n.7 (2010); California-Nevada Annual Conf., supra, at 764 & 767-68.

2. Technical Trust – A trust that arises as a matter of law from the relationship between the parties and not as a matter of contract, as, for example, between an attorney and his client, an executor and his estate, or a guardian and his ward.  Honkanen v. Hopper (In re Honkanen), 446 B.R. 373, 379 n.7 (B.A.P. 9th Cir. 2011).

The second two types of trusts may be characterized as "implied trusts" that are "remedial" in nature, as they arise in equity and are imposed by a court as a remedy to prevent what would otherwise be perceived as an inequitable result.  They do not require writings or express declarations of trust as between the parties.  Honkanen,

supra, at 379; Swimmer v. Moeller (In re Moeller), 466 B.R. 525 (Bankr. S.D. Cal. 2012). These two trusts have been defined as follows:

> 3. Resulting Trust – One that (a) arises by operation of law from a transfer of property under circumstances showing that the transferee was not intended to take the beneficial interest and (b) is imposed for the purpose of carrying out and enforcing the inferred intent of the parties to establish a trust; in such a trust, the trustee has no duties to perform, no trust to administer and no purpose to carry out except the single task of holding onto the property or conveying the property to the beneficiary. Fid. Nat'l Title Ins. Co. v. Schroeder, 179 Cal. App. 4th 834, 837 (2009); Moeller, supra, at 537.
>
> 4. Constructive Trust – Sometimes referred to as a "fraud-rectifying" trust (although, in California, the wrongful conduct may be less than actual fraud or intentional misrepresentation) designed to defeat or prevent the wrongful act of a party to a transaction; a trust that may be imposed by a court to compel a person who has property to which he is not justly entitled to transfer it to the person entitled to it; a constructive trust may be imposed where the court finds: (a) the existence of a res; (b) the right of a complaining party to that res; and (c) some wrongful acquisition or detention of the res by another party who is not entitled to it; the hallmark of a constructive trust is inequity by the trustee giving rise to imposition of the implied trust; the trust is not intended to effectuate the intent of the parties; it is imposed to frustrate the wrongful intent of the transferee. Weststeyn Dairy 2 v. Eades Commodities Co., 280 F. Supp. 2d 1044, 1084 (E.D. Cal. 2003) (citing Communist Party v. 522 Valencia, Inc., 35 Cal. App. 4th 980, 41 Cal. Rptr. 2d 618 (1995)).

So what kind of trust, if any, did Tawansy and the Debtor create by entering into the Debtor/Tawansy Agreements? Notwithstanding the language used in the agreements, the type of trust at issue here is an "express trust." The parties

executed a written agreement expressing their intention to have the Debtor act as a trustee for the benefit of Tawansy Inc. with regard to any portion of the Deposits refunded by the Superior Court. Their particular choice of language for expressing their intent to create a trust is not dispositive. No particular magic language is required. See Maddox v. Rainoldi, 163 Cal. App. 2d 384, 388 (1958) ("where the owner of property declares that he holds it for the benefit of another, this may be sufficient manifestation of intention to create a trust . . . although he does not use the word trust").

Conversely, under California law, the parties' use of the word "trust" or the words "in trust" do not necessarily suffice to create a trust relationship. The language employed by the parties is only one of the factors to be considered. Petherbridge v. Prudential Sav. & Loan Ass'n, 79 Cal. App. 3d 509, 516 (1978). If, for example, the agreement between the parties permits the co-mingling of payments with the transferee's general funds, such payments are not held in trust, even if the agreement uses these words. In re Coupon Clearing Serv., 113 F.3d 1091, 1101 (9th Cir. 1997) see also In re Oxford Mgmt., Inc., 4 F.3d 1329, 1335 (5th Cir. 1993) (no express trust can exist when recipient of funds may use them as its own and commingle them with its own money).

The relationship between the parties here is not sufficient to give rise to a technical trust and both resulting trusts and constructive trusts are remedies imposed by a Court under circumstances in which there is no written trust agreement executed by the parties. Further, the Debtor did not come into possession of the Deposits through conduct that could be described as wrongful in any sense of the word. The parties expressly agreed that the Debtor could deposit these funds with the Superior Court. Thus, the imposition of a constructive trust would be inappropriate on these facts.

What, if any, significance, therefore, should this Court derive from the fact that the Debtor/Tawansy Agreements impose upon the Debtor an obligation to hold any refund in a "constructive trust" for the benefit of Tawansy Inc.? As discussed above, this is a motion for summary adjudication of issues – a context in which the Court

cannot resolve issues of disputed fact. Therefore, the Court has assumed for the sake of this analysis that the Debtor/Tawansy Agreements were executed on or about the dates shown on the agreements themselves, but the draftsman's choice of the words, "constructive trust," might be characterized as a "smoking gun" evidencing a contrary proposition. The use of this phrase strongly suggests that the agreements were drafted long after the Deposits were made -- after the decision had been made to put the Debtor in bankruptcy and Dr. Tawansy had had the opportunity to confer with bankruptcy counsel as to the showing that must be made in order to keep the Deposits from being treated as assets of the Debtor's bankruptcy estate. Would it have occurred to a layperson drafting these documents at the time the Deposits were being made to say that any refund should be held in a *constructive* trust, rather than merely that they should be held in trust? And what lawyer would draft a document in which two parties *expressly* agreed to create a *constructive* trust? The two concepts are mutually exclusive. Thus, the most likely scenario is that the Debtor/Tawansy Agreements were drafted by Dr. Tawansy himself after he learned what legal arguments needed to be made in order for him to prevail in this Action.

Nevertheless, assuming these documents were executed on the dates referenced in these agreements,[13] the Court cannot find as a matter of law that no enforceable trust was created. RIF has argued that delivery of the Deposits to the Superior Court for application against obligations of the Debtor is incompatible with the idea that these funds were to be held in trust for the benefit of Tawansy Inc., or that the Deposits ceased to be trust funds once they were paid to the Superior Court for this purpose. However, the Court can find no support for this proposition in the applicable caselaw, and RIF has not provided any.

While it is true that funds that a trustee is permitted to commingle with and use as his own for any purpose cannot be trust funds, the Court is not aware of any

---

[13] If, on the other hand, these agreements were executed after the Deposits were made, even if the intention was to memorialize the parties' prior agreement or understanding as to the trust nature of these funds, the effort to create an express trust after the fact could be characterized as an avoidable preferential transfer.

reason that funds that are set aside to be used for one specific purpose only and refunded if not used for this purpose cannot be trust funds. It is the would-be trustee's unfettered control and right to use funds for any purpose that destroys the existence of the trust, not the expressly authorized application of the funds against an obligation of the trustee. See generally Weststeyn Dairy 2 v. Eades Commodities Co., 280 F. Supp. 2d 1044, 1084 (E.D. Cal. 2003); In re IFS Fin'l Corp., 669 F.3d 255 (5th Cir. 2012).

It is also true that a party seeking to keep a trust res out of a bankruptcy estate will not succeed if the trust res has been comingled with nontrust assets of the debtor, unless he can trace his funds through the comingled account. See In re Bullion Res. of N. Am., 836 F.2d 1214, 1218 n. 5 (9th Cir. 1988) (citing Kobida v. Hinkelmann, 53 Cal. App. 2d 186, 127 P.2d 657 (1942)), but there are no tracing issues here. The Deposits have remained segregated at all times. Thus, absent a finding as to the validity of the Debtor/Tawansy Agreements, the Court cannot resolve the parties' competing claims to the Combined Deposits, and the Court cannot make a factual finding as to the validity of the Debtor/Tawawnsy Agreements in the context of a motion for summary adjudication of issues.

## IV

## CONCLUSION

For the reasons set forth above, the Motion should be granted to the extent that it seeks a declaration that RIF is entitled to recover the Third Deposit and that RIF is not entitled to recover the Combined Deposits. The Trustee should pay RIF the amount of the Third Deposit, less RIF's one-half share of the mediator's fees and expenses in this action.

The balance of the relief sought in the Motion must be denied. But for the existence of the Debtor/Tawansy Agreements, the Court would find that the Combined Deposits are assets of the Debtor's bankruptcy estate and that, at best, Tawansy Inc. holds an unsecured claim for the amount of these Deposits, but that recovery on account of this claim is barred due to Tawansy's failure to file a timely proof of claim. In

light of Tawansy's belated proffer of the Debtor/Tawansy Agreements, however, summary adjudication of Tawansy's argument that the Deposits are trust funds would be inappropriate. Notwithstanding the serious questions that exist as to the validity of these agreements, the Court cannot summarily adjuduciate disputed issues of material fact in this procedural context.

In light of the foregoing, the Trustee is hereby directed to lodge an order memorializing the Court's rulings on RIF's evidentiary objections and granting the Motion in part and denying it in part on terms that are consistent with the rulings outlined herein.

### 

Date: March 12, 2018

Sheri Bluebond
United States Bankruptcy Judge